## CIRCUIT COURT OF THE CITY OF ROANOKE

Metwood, Inc.

v.

True Value
Home Center, Inc.

v.

Hamilton Land Co., Inc.

September 30, 2002

Case No. CL01-921

BY JUDGE CHARLES N. DORSEY

This matter comes on upon the evidence introduced at trial on September 19, 2002, which, in addition to the ore tenus testimony of witnesses, consisted of the package of exhibits from each side, to which no objection was made by the other side.

In pertinent part, the facts are that True Value Home Center, Inc. ("True Value") contracted with Metwood, Inc. ("Metwood") to construct certain specially manufactured materials, primarily joists and trusses. True Value then sold these same materials to Hamilton Land Company, Inc. ("Hamilton). True Value received invoices from Metwood, and True Value then generated its own invoices to Hamilton.

Hamilton is a third-party defendant, who made no appearance at trial and against whom default judgment on liability has already been awarded. Counsel for Metwood and True Value are in agreement that Metwood submitted a total of five invoices to True Value pertaining to the materials ordered and that four have been paid. The gist of the dispute between

Metwood and True Value is that Metwood contends, on the unpaid invoice, that it holds specially manufactured trusses, which cannot be re-sold and which True Value has never picked up, requested be delivered, or paid for. True Value contends that Metwood improperly let Hamilton, the ultimate purchaser, know of the profit margin True Value was receiving on the specially manufactured trusses, by forwarding to Hamilton a copy of Metwood's invoice to True Value. True Value contends that such action, though not an express term of the contract, was violative of the course of dealing and usage of the trade, pursuant to Virginia Code § 8.1-205. Both parties concede that the Uniform Commercial Code applies to this issue.

As part of the facts involved, and also as the genesis of the real practical problem in this matter, True Value erroneously sent an invoice to Hamilton for "trusses" when Hamilton had previously been invoiced for trusses and had paid that invoice. In fact, True Value's invoice should have been for "joists." Apparently as a result of the confusion brought on by Hamilton's insistence that it had already paid that invoice, True Value, without understanding Hamilton's rationale for non-payment, advised Metwood that payment was not forthcoming and that Metwood should try and collect its outstanding balance from Hamilton. The sequence of these facts is in dispute, but the facts themselves are essentially undisputed.

Ms. Stacy, for True Value, testified that she considered the contract breached when Mr. Desper, of Metwood, sent copies of Metwood's invoices to Hamilton. There has been much argument over the issue of whether Mr. Desper took that action prior to Ms. Stacy's closing True Value's account with Metwood, at which time she concededly told Mr. Desper to collect the balance from Hamilton if possible, or whether Mr. Desper sent copies of the invoice to Hamilton only after Ms. Stacy told him to collect the account from Hamilton.

Under either version of the facts, these two actions occurred in the latter part of March or early April. Mr. Desper's notes, (introduced as Tab 14 of plaintiff's exhibit number one) indicated that Ms. Stacy told him to pursue direct payment on April 18. Tab seven, of the same exhibit, a letter from True Value to Hamilton, indicated that Ms. Stacy closed the Hamilton account in March 2001. Ms. Stacy, in her testimony, opined that that was a typographical error and that the account was not actually closed until April.

Counsel for both sides make much of the intervening "window" between the latter part of March and April 18th regarding when Mr. Desper, in violation of what is claimed to be industry standards, forwarded copies of Metwood's invoices to Hamilton.

That dispute is really not dispositive of this matter. This was a contract which originated by virtue of purchase orders forwarded from True Value to

Metwood. These purchase orders occurred on different dates. The only invoice in question, Metwood invoice number 6654, originated on or about December 12, 2000, although the exact date on the purchase order is difficult to make out on the photocopy. In any event, testimony and documents support the fact that the trusses described in that invoice were manufactured and ready shortly thereafter, long before March of 2001. There was testimony from several parties pertaining to the fact that Metwood retained those trusses on its yard due to inclement weather and with the acquiescence, if not at the express request, of Hamilton and True Value. It is also significant to note that True Value disclosed to Metwood the identity of Hamilton from the very initiation of this contract and encouraged representatives of Metwood to contact representatives of Hamilton to obtain certain necessary information for manufacture of the materials in question.

Pursuant to Virginia Code § 8.2-501, the trusses in question were identified to the contract after they were manufactured and designated by Metwood as the goods to which the contract referred, after which time they were placed on Metwood's yard and were available to True Value or Hamilton.

The time of this identification, and the fact that it was well prior to any of the disputed action taken by Metwood's representative, is significant since Metwood maintains this as an action for the price pursuant to Virginia Code § 8.2-709 and True Value offers no defense except for the supposed breach previously explained. Pursuant to that statute, the seller is entitled to recover the price of goods identified to the contract if the seller is unable to resell them at a reasonable price after reasonable effort or if circumstances reasonably indicate that such effort will be unsuccessful. Based on the testimony, I find that Metwood made a reasonable effort to resell these trusses at a reasonable price and was unable to do so.

Consequently, due to the fact that these specifically manufactured goods were identified to the contract prior to the time that the defendant claims the plaintiff breached any portion of this contract, the plaintiff, Metwood, is entitled to recover the price and any incidental damages pursuant to Virginia Code § 8.2-710.

There are two issues regarding the final computation of damages. The first refers to shipping and handling charges of $5,400.00 reflected on invoice 6654 of Metwood, and the second issue pertains to the claimed storage charge of $100.00 per month since January 2001.

Metwood concedes that the materials in question are still on its yard and have never been shipped and consequently no shipping and handling charges are involved. Separately, although the storage charge is clearly not a

term of the original contract, and while the testimony of one of the principals of Metwood, Mr. Callahan, was somewhat "soft" on that issue, I nonetheless find that storage charges are appropriate incidental damages pursuant to the statute and that a charge of $100.00 per month is reasonable under the circumstances of this case. I am beginning the storage charges effective May 2001 since Metwood had intended to permit these materials to remain on its yard, without charge, until it became clear that the parties were at odds. I am using May of 2001 since the parties had clearly severed relations by then and storage charges should accrue.

I am not including the shipping and handling charges of $5,400.00 in the judgment sum unless True Value wishes these goods shipped to them. In the event they do, I ask that Mr. Strickland include the $5,400.00 in the judgment sum. Also, pursuant to Virginia Code § 8.2-709, Metwood must hold for True Value goods that have been identified to the contract and are still in its control. Inasmuch as it has done so for the period of time this matter has been pending, I find that it has complied with the statute and if True Value wishes to pick up these goods, it must do so prior to entry of the final order in this matter. Following entry of the order, Metwood is free to dispose of these goods. I am not awarding any incidental damages to Metwood for scrapping, salvaging, or otherwise disposing of these goods since the testimony on that issue was speculative and indefinite.

I ask that Mr. Strickland please prepare an order granting judgment to Metwood in the amount of $32,494.27, plus $1,700.00 incidental damages incurred for storage, plus shipping and handling of $5,400.00 if True Value wishes these materials delivered to it, along with its costs. Please also have the order reflect that the judgment amount is also now the judgment sum obtained by True Value against Hamilton on the third-party claim.